**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

```
-----------------------------X
                             :
JOSUE CRUZ                   :    Civil No. 3:22CV00017(SALM)
                             :
v.                           :
                             :
POLICE DEPT., et al.         :    January 20, 2022
                             :
-----------------------------X
```

<u>**INITIAL REVIEW ORDER**</u>

Self-represented plaintiff Josue Cruz ("plaintiff") is a pretrial detainee in the custody of the Connecticut Department of Correction ("DOC").[1] On January 5, 2022, plaintiff filed this action pursuant to 42 U.S.C. §1983 ("Section 1983"). <u>See</u> Doc. #1 at 1-2. He seeks to proceed <u>in forma pauperis</u>. <u>See</u> Doc. #2. Plaintiff asserts that on or about August 12, 2011, during the course of an arrest by officers of the Waterbury Police Department ("WPD"), he was subjected to an excessive use of force, and that during the use of force, the officers involved

---

[1] The Court may take judicial notice of matters of public record. <u>See</u>, <u>e.g.</u>, <u>Mangiafico v. Blumenthal</u>, 471 F.3d 391, 398 (2d Cir. 2006); <u>United States v. Rivera</u>, 466 F. Supp. 3d 310, 313 (D. Conn. 2020) (taking judicial notice of BOP inmate location information); <u>Ligon v. Doherty</u>, 208 F. Supp. 2d 384, 386 (E.D.N.Y. 2002) (taking judicial notice of state prison website inmate location information). The Court takes judicial notice of the Connecticut DOC website, which reflects that plaintiff is currently a pretrial detainee confined at the MacDougall-Walker Correctional Center. <u>See</u> http://www.ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=279366 (last visited Jan. 18, 2022).

used racial slurs. <u>See</u> Doc. #1 at 40-41. He brings claims against: the WPD; two John Doe WPD Officers; one John Doe WPD K-9 Officer; one John Doe WPD Supervisor; WPD Lt. Dennis Phelan; and Attorney Jeremy Santanasio. <u>See</u> Doc. #1 at 1.

As a "cause of action" plaintiff states: "My right being violated First Amendment 8 Amendment and 14 Amendment." Doc. #1 at 3 (sic). The Complaint does not articulate whether the defendants are sued in their individual or official capacities, and contains no demand for relief. <u>See</u> Doc. #1 at 5.

## I.   **<u>Standard of Review</u>**

Pursuant to 28 U.S.C. §1915A, the Court must review "a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. §1915A(a). Upon review, the Court must "dismiss the complaint, or any portion of the complaint, if the complaint (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. §1915A(b).

Although detailed allegations are not required, a complaint must include sufficient facts to afford a defendant fair notice of the claims and demonstrate a right to relief. <u>See</u> <u>Bell Atlantic v. Twombly</u>, 550 U.S. 544, 555-56 (2007). A plaintiff must plead "enough facts to state a claim to relief that is

plausible on its face." Id. at 570. Conclusory allegations are
not sufficient. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).
Nevertheless, it is well-established that complaints filed by
self-represented litigants "'must be construed liberally and
interpreted to raise the strongest arguments that they suggest.'"
Sykes v. Bank of Am., 723 F.3d 399, 403 (2d Cir. 2013) (quoting
Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir.
2006)).

## II.  **Factual Allegations**

The Court accepts the following allegations of the
Complaint as true, solely for purposes of this initial review.
See Iqbal, 556 U.S. at 678-79.

On August 12, 2011, plaintiff was arrested by officers of
the WPD. See Doc. #1 at 38. After the arrest, rather than taking
him to the police station, the officers took him behind an
abandoned building. See id. at 40. They told plaintiff they were
"gonna teach [him] a lesson ... for hitting a white woman" and
called him racial slurs related to his Puerto Rican heritage.
Id. at 41. The officers kicked him in the face and back, and
then the K-9 officer gave the police dog the "command to attack"
while plaintiff was seated, and handcuffed. Id. The K-9 officer
then told the dog to stop, and another officer released one side
of the handcuffs and told plaintiff to run. See id. Plaintiff

said he needed an ambulance, and the K-9 officer again commanded the dog to attack plaintiff, which the dog did. See id.

Plaintiff asserts that his parents "are my witness of my arrest, and the brutality beating and multiple dog bite excessive force." Id. at 4 (sic).

Plaintiff was transported to the St. Mary's Hospital Emergency Department. See id. at 24. The ED report indicates that plaintiff "suffered numerous dog bites." Id.

> The largest laceration was on the inner aspect of the right upper arm, a laceration extending roughly 6 inches in length and well into the muscle bed. He also had 2 lacerations to the deltoid area and [2] separate lacerations to the posterior aspect of his right shoulder, as well as a 4-inch laceration to the left thigh which again extends through the fat and into the muscle layer.

Id. Plaintiff's wounds were cleaned and closed, and he received antibiotics. See id. Plaintiff admitted he bad been drinking, but denied any use of "street drugs." Id.

After the incident, plaintiff contacted an attorney, defendant Jeremy Santanasio, who "took my case and hold on to it for 2 years limitation with out filing any paperwork with the court and gave me back my case saying to me he's friends with the P.D. officers, I'm trying to sue, so here's ur case back." Id. at 3 (sic).

Plaintiff also filed a Citizen Complaint with the WPD on July 28, 2020. See id. at 37, 39. He alleges that "Lt. Dennis

Phelan didn't investigate my case because I wouldn't talk to him without an Attorney[.]" Id. at 3. Plaintiff provides a letter from Lt. Phelan dated January 12, 2021, stating: "[T]he complaint you made has been investigated, and it was found to be **Not Sustained**[.]" Id. at 42. He also provides a letter addressed to Lt. Phelan, dated February 5, 2021, asserting that when Lt. Phelan visited him, plaintiff told Lt. Phelan "I'm not speaking to u without my Attorney present that, I have now AND neither my father that is the witness of my arrest is speaking to you without my attorney." Id. at 43 (sic).

## III. **Discussion**

The Court construes the Complaint as asserting a claim for use of excessive force during an arrest, in violation of the Fourth Amendment. See Graham v. Connor, 490 U.S. 386, 395 (1989) ("[A]ll claims that law enforcement officers have used excessive force ... in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment[.]"). "The Eighth Amendment protects against cruel and unusual punishment. See U.S. Const. amend. VIII. These protections of the Eighth Amendment only apply to a person who has been criminally convicted and sentenced; they do not apply to the conduct of police officers in connection with the investigation and arrest of suspects prior to conviction and sentencing." Spicer v. Burden, --- F. Supp. 3d. ---, No.

3:19CV01472(JAM), 2021 WL 4477406, at *6 (D. Conn. Sept. 30, 2021). Plaintiff does not allege that he was a sentenced inmate at the time of any of the relevant events. Accordingly, to the extent plaintiff asserts violations of the Eighth Amendment, any such claims are **DISMISSED, with prejudice**.

Plaintiff mentions the First Amendment, see Doc. #1 at 3, but makes no allegations that appear to be related to any claim for a violation of his First Amendment rights. Accordingly, to the extent plaintiff asserts violations of the First Amendment, any such claims are **DISMISSED, without prejudice**.

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures[.]" U.S. Const. amend. IV. The Fourth Amendment's protection against unreasonable seizures prohibits the use of excessive force by police officers during the course of an arrest. See Hemphill v. Schott, 141 F.3d 412, 416-17 (2d Cir. 1998).

A.   Waterbury Police Department

The Complaint names the Waterbury Police Department as a defendant. See Doc. #1 at 1. However, "a municipal police department is not subject to suit under section 1983 because it is not an independent legal entity." Petaway v. City of New Haven Police Dep't, 541 F. Supp. 2d 504, 510 (D. Conn. 2008); see also Nicholson v. Lenczewski, 356 F. Supp. 2d 157, 164 (D.

6

Conn. 2005) ("A municipal police department ... is not a
municipality nor a 'person' within the meaning of section
1983."). Accordingly, all claims against the Waterbury Police
Department are **DISMISSED, with prejudice.**

    B.   <u>John Doe Officers – Official Capacity Claims</u>

    As noted, the Complaint does not indicate whether plaintiff
brings suit against the defendants in their individual or
official capacities. The Court therefore considers both.

    A claim against a municipal officer in his or her official
capacity is essentially a claim against the municipality for
which he or she works. See <u>Davis v. Stratton</u>, 360 F. App'x 182,
183 (2d Cir. 2010) (summary order).

    "[A] municipality cannot be held liable under §1983 on a
<u>respondeat</u> <u>superior</u> theory." <u>Monell v. Dep't of Soc. Servs. of
City of N.Y.</u>, 436 U.S. 658, 691 (1978). "Plaintiffs who seek to
impose liability on local governments under §1983 must prove,
<u>inter</u> <u>alia</u>, that the individuals who violated their federal
rights took action pursuant to official municipal policy."
<u>Outlaw v. City of Hartford</u>, 884 F.3d 351, 372 (2d Cir. 2018)
(citation and quotation marks omitted). Plaintiff has not
alleged any policy, or any facts even suggesting such a policy,
sufficient to state a <u>Monell</u> claim against the City of
Waterbury, and therefore, any official capacity claims against
the John Doe Officers also fail. See <u>Garcia-Ortiz v. City of</u>

Waterbury, No. 3:19CV00426(VAB), 2020 WL 1660114, at *4 (D.
Conn. Apr. 3, 2020) (dismissing claims against municipality and
individual officers in their official capacities because
conclusory allegations did not satisfy Monell). Accordingly, to
the extent the Complaint brings claims against the John Doe
Officers in their official capacities, such claims are
**DISMISSED, without prejudice.**

    C.   John Doe Officers – Individual Capacity Claims

    The Complaint clearly and expressly alleges that the use of
force on which plaintiff bases his claims occurred on August 12,
2011, more than ten years before the Complaint was filed. See
Doc. #1 at 38 (stating that the incident occurred on August 12,
2011). The attachments to the Complaint confirm that date. See
id. at 24 (Emergency Department report indicating plaintiff was
admitted for the dog bite injuries on August 12, 2011); id. at
37 (WPD Citizen Complaint form completed by plaintiff,
indicating events occurred on August 12, 2011).

    "In Connecticut, the general three-year statute of
limitations for personal injury claims, set forth in Connecticut
General Statutes §52-577, has uniformly been found applicable to
federal civil rights actions." Vilchel v. Connecticut, No.
3:07CV01344(JCH), 2008 WL 5226369, at *2 (D. Conn. Dec. 11,
2008); see also Lounsbury v. Jeffries, 25 F.3d 131, 134 (2d Cir.

1994) (finding that three-year limitations period applies to §1983 cases in Connecticut).

A District Court may dismiss a claim pursuant to §1915A where it is plain on the face of the Complaint that the claims set forth therein are time-barred. See, e.g., Rowe v. Smith, No. 2:18CV00188(CR), 2019 WL 11626179, at *1 (D. Vt. Feb. 15, 2019); Harnage v. Gaudette, No. 3:16CV01972(AWT), 2017 WL 1003232, at *2 (D. Conn. Mar. 13, 2017) ("[T]he court may properly dismiss a case sua sponte for failure to state a claim upon which relief may be granted where an affirmative defense, like the statute of limitations, is apparent on the face of the complaint.")

> A dismissal under section 1915(d) based on the statute of limitations is especially appropriate where, as in this case, the injuries complained of occurred more than five years before the filing of the complaint -- well outside the applicable three-year limitations period, there are no applicable tolling provisions as a matter of law, and plaintiff has alleged no facts indicating a continuous or ongoing violation of his constitutional rights.

Pino v. Ryan, 49 F.3d 51, 54 (2d Cir. 1995) (citation omitted). The claims arising out of the August 12, 2011, use of force were first filed more than ten years after that date. See Doc. #1 at 1. Accordingly, they are clearly time-barred.

All claims against the John Doe Officers are therefore **DISMISSED, without prejudice, as time-barred.**

D.    Defendant Jeremy Santanasio

Plaintiff asserts that Attorney Jeremy Santanasio agreed to represent him and to bring an excessive force claim against the WPD Officers on his behalf, but then failed to file such a claim, because he was friends with the officers. See Doc. #1 at 3. The Court construes these allegations as asserting a claim for legal malpractice. "The statute of limitations for legal malpractice actions is §52-577, which provides: 'No action founded upon a tort shall be brought but within three years from the date of the act or omission complained of.'" Deleo v. Nusbaum, 888 A.2d 189, 193 (Conn. Super. Ct. 2004), aff'd, 883 A.2d 1239 (Conn. 2005).

If, as plaintiff alleges, Santanasio "gave [him] back [his] case" after two years, Doc. #1 at 3, he would have known of the alleged malpractice no later than 2013, that is, two years after the use of force incident. The claims against Santanasio are also, therefore, plainly time-barred. Accordingly, all claims against defendant Santanasio are **DISMISSED, without prejudice.**

E.    Claims Against Lt. Phelan

Plaintiff alleges:

Lt. Dennis Phelan didn't investigate my case because I wouldn't talk to him without an Attorney because he wouldn't represent himself in who he was and he wanted me to sign a sworn statement without me reading it, he was trying to play me he was working for the other police doing them a favor.

Doc. #1 at 3 (sic). However, plaintiff's submissions indicate that Phelan <u>did</u> conduct an investigation: he visited plaintiff; attempted to obtain a sworn statement from him about the events of August 12, 2011; may have requested to speak to plaintiff's father as a witness to those events; and issued a letter indicating that the complaint was, in fact, investigated. <u>See</u> Doc. #1 at 42, 43.

Plaintiff does not explain what claim he wishes to bring against Lt. Phelan. To the extent plaintiff contends that Lt. Phelan's actions contributed to the violation of his rights by the John Doe officers, that is impossible, given that Phelan's actions "occurred after any potential violation" of plaintiff's rights during the course of his arrest. <u>Olschafskie v. Town of Enfield</u>, No. 3:15CV00067(MPS), 2017 WL 4286374, at *15 (D. Conn. Sept. 27, 2017). To the extent plaintiff contends that Lt. Phelan's actions constituted an independent constitutional violation, he has provided only conclusory allegations about Lt. Phelan's motivations, and has not alleged any cognizable claim.

Accordingly, all claims against Lt. Phelan are **DISMiSSED, without prejudice**, for failure to state a claim.

## IV. <u>Conclusion</u>

For the foregoing reasons, the court enters the following orders:

11

- All claims against the Waterbury Police Department are **DISMISSED, with prejudice.** All Eighth Amendment claims are **DISMISSED, with prejudice.**

- All other claims against all other defendants are **DISMISSED, without prejudice.**

If plaintiff wishes to attempt to state a viable claim against any defendant, he may file an Amended Complaint on or before **February 15, 2022.** Any such Amended Complaint must <u>not</u> assert any claims that have been dismissed <u>with prejudice</u> in this Order. An Amended Complaint, if filed, will completely replace the original Complaint, and the Court will not consider any allegations made in the original Complaint in evaluating any Amended Complaint. The Court will review any Amended Complaint after filing to determine whether it may proceed to service of process on any defendants named therein.

**<u>CHANGES OF ADDRESS</u>**: If plaintiff changes his address at any time during the litigation of this case, he **MUST** file a Notice of Change of Address with the Court. **Failure to do so may result in the dismissal of the case.** Plaintiff must give notice of a new address even if he remains incarcerated. He should write "PLEASE NOTE MY NEW ADDRESS" on the notice. It is not enough to just put a new address on a letter or filing without indicating that it is a new address.

Plaintiff shall utilize the Prisoner E-filing Program when filing documents with the Court.

It is so ordered this 20th day of January, 2022, at New Haven, Connecticut

                              /s/
                              _____
                              Hon. Sarah A. L. Merriam
                              United States District Judge